Spears & Imes LLP
767 Third Avenue
New York, NY 10017

Hon. Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

November 24, 2023

Re: *United States v. Amit Bhardwaj, et al.,* **22 Cr. 398 (GHW)**

Dear Judge Woods:

We respectfully submit this memorandum in advance of defendant Amit Bhardwaj's sentencing in this case, which is scheduled for December 8, 2023.

Mr. Bhardwaj pleaded guilty on March 22, 2023 to four counts of conspiracy to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371; seven counts of securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 18, United States Code, Section 2, and Title 17, Code of Federal Regulations, Section 240.10b-5; and two counts of wire fraud, in violation of Title 18, United States Code, Section 1343. All of the counts of conviction stem from Mr. Bhardwaj's misappropriation of inside information from his then-employer, Lumentum Holding Inc. ("Lumentum"), relating to its potential acquisitions of two other companies (Coherent and Neophotonics), and his tipping and trading on that information at certain times between December 2020 and April 2022.

Under the current United States Sentencing Guidelines, Mr. Bhardwaj faces an advisory Guidelines range of 57 to 71 months' imprisonment (the "Guidelines Range"). While the Probation Department (and the parties, at the time of the plea agreement) originally calculated the advisory Guidelines range as 70 to 87 months, this preceded a November 1, 2023 amendment to the Guidelines that provides a two-level reduction in offense level to defendants, like Mr. Bhardwaj, who have zero criminal history points and meet certain other criteria. *See* U.S.S.G. Section 4C1.1(a) ("Adjustment for Certain Zero-Point Offenders"). The amendment applies retroactively. With the reduction, Mr. Bhardwaj's offense level is 25, instead of 27, which combined with a criminal history category of I, yields the Guidelines Range of 57 to 71 months.

For the reasons discussed in more detail below, we submit that a sentence substantially below the Guidelines Range is warranted in this case, in order not to exceed the amount of punishment necessary to comply with the purposes set forth in Title 18, United States Code, Section 3553(a). First and foremost, Mr. Bhardwaj has demonstrated an exceptional degree of acceptance of responsibility for his conduct. He pleaded guilty before making any pretrial motions, and even before the pretrial conference to schedule such motions. He was the first among the individuals charged in the Indictment to plead guilty. He has led, with the single aberration of the offense conduct in this case, an exemplary life as a parent and member of his community. He profited far less from the

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

offense conduct than is reflected in the Guidelines Range – and indeed, the Guidelines Range is largely driven by the profits that Mr. Bhardwaj's co-conspirators made, with respect to which Mr. Bhardwaj was not informed of the amount until well after the fact. His conduct, while indisputably serious, also compares similarly (and in some respects even favorably) with that of other insider trading defendants in this District who have received sentences substantially below their Guidelines ranges, and substantially below 57 months.

We respectfully ask the Court to impose a sentence substantially below the Guidelines Range on Mr. Bhardwaj. Such a sentence would be just in light of Mr. Bhardwaj's history and characteristics, the facts and circumstances of the offense conduct, and the sentences imposed on similarly situated defendants. It would reflect his exceptionally quick acceptance of responsibility, a decision he made that is far more consistent with the way he has lived his entire life than was his decision to engage in the the offense conduct. It would allow Mr. Bhardwaj to resume as quickly as possible the productive and family-oriented life he has lived for 50 years.

## I.    Nature and Circumstances of the Offense

The offense of conviction is insider trading, a serious crime that undermines confidence in the financial markets and for which Mr. Bhardwaj offers no excuse. Nevertheless, the advisory Guidelines Range in this case is higher than what the nature and circumstances of Mr. Bhardwaj's offense demand in terms of just punishment, even if the offense conduct were viewed in a vacuum without taking into account the history and characteristics of Mr. Bhardwaj and other Section 3500 factors that, as discussed further on below, counsel powerfully in favor of a sentence substantially below the Guidelines Range.

From 2019 to 2022, Mr. Bhardwaj worked as the information security officer at Lumentum. In the course of his job, he was sometimes exposed to material non-public information relating to acquisitions that Lumentum was considering. He owed a duty of trust and confidence to Lumentum to keep such information confidential.

Mr. Bhardwaj violated the duty of trust and confidence that he owed to Lumentum by misappropriating inside information about two potential acquisitions that Lumentum was considering, for the purpose of tipping others and – to a more limited extent – trading in his own account. The first was Lumentum's potential acquisition of Coherent, which was announced on January 19, 2021. The announcement caused the stock price of Coherent to rise by approximately 29.6% from one day to the next. PSR ¶ 31. In December 2020, in the course of his job, Mr. Bhardwaj became privy to sufficient information to determine that Lumentum was considering a potential acquisition of Coherent. He should have done nothing with the information he came across, but he made the self-destructive decision to tip friends and family about it and to trade on it himself. PSR ¶¶ 35-38. When he tipped others, Mr. Bhardwaj had the understanding that they would trade, but he did not know the amount they would trade or how much money they made.

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

The second acquisition under consideration was Lumentum's potential acquisition of Neophotonics, which was announced on November 4, 2021. The announcement caused the share price of Neophotonics to rise by approximately 38.8% from one day to the next. PSR ¶ 42. In October 2021, in the course of his job, Mr. Bhardwaj learned of Lumentum's interest in potentially acquiring Neophotonics. PSR ¶ 43. He should have kept this information secret, but he tipped several friends with it. PSR ¶ 43. Similar to his conduct with respect to Coherent, Mr. Bhardwaj understood that the people he tipped would trade in Neophotonics, but he did not know what amount they traded or how much money they made.

The gap between what Mr. Bhardwaj knew up-front and what certain of the tippees actually did with the information is significant, and bears on the degree of Mr. Bhardwaj's culpability in the context of determining a fair sentence. In a disclosure letter to Mr. Bhardwaj dated February 23, 2023, the Government discussed an interview it conducted with a tippee who later became a cooperating witness for the Government (referred to here as the "Tippee") (Exhibit A). According to the Government, the Tippee recalled that Mr. Bhardwaj was surprised to learn, after the Tippee had already traded, how much money the Tippee had made from trading on information he obtained from Mr. Bhardwaj - money that nonetheless contributes directly to Mr. Bhardwaj's advisory Guidelines Range. *See* Ex. A. What is more, Mr. Bhardwaj was surprised by a number that the Tippee *deliberately lowballed* by a staggering amount. The Tippee told Mr. Bhardwaj, and Mr. Bhardwaj was surprised to hear, that the Tippee had made $131,000 in trades. *See id.* In reality, the Tippee had made over $1.24 million in trades. *See id.* The fake number of $131,000 was more than Mr. Bhardwaj thought the Tippee had made, let alone the exponentially higher $1.24 million figure. This gap is illustrative of the disconnect between the advisory Guidelines Range and the degree of Mr. Bhardwaj's culpability, including relative to the Tippee, in terms of fairness and common sense.

None of this is to say that Mr. Bhardwaj is not culpable for tipping the Tippee and others – he plainly is – but in assessing the degree of his culpability and determining what would constitute a just sentence, his lack of understanding as to the amount of money others made, and the fact that it exceeded by far the amount he made for himself, is significant, particularly where the amount that others made is the primary driver of the advisory Guidelines Range. As the Tippee himself acknowledged to the Government, the $1.24 million in profits that he had made, unbeknownst to Mr. Bhardwaj, made the crime "much bigger" than Mr. Bhardwaj had understood it to be. *See* Ex. A. And yet, the "much bigger" amount is what drives the advisory Guidelines Range. This dynamic is critical in considering what would constitute a fair sentence for Mr. Bhardwaj.

After Mr. Bhardwaj and his co-conspirators were notified that the FBI was investigating their conduct, Mr. Bhardwaj discussed with them ways to avoid getting caught. PSR ¶¶ 53-54. He did not then participate in the creation of a fake promissory note to mislead the FBI, as others in this case are alleged to have done. PSR ¶ 55. All told, Mr. Bhardwaj made $547,286 from his offense conduct, all of which he is paying back in forfeiture. PSR ¶ 17. While this was money that he wrongly obtained through

3

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

insider trading, it was at least six times less than the "gain resulting from the offense" figure of $3,500,000 to $9,000,000 that drives Mr. Bhardwaj's offense level under the Sentencing Guidelines. Again, while that figure is accurate for Guidelines purposes, it is not commensurate with Mr. Bhardwaj's culpability from a perspective of common sense or fairness. The $3,500,000 to $9,000,000 bracket significantly overstates the benefit that Mr. Bhardwaj received from his conduct, and it results in an advisory Guidelines Range that is much higher than what is necessary to reflect the seriousness of the offense and impose a just sentence on Mr. Bhardwaj. *See, e.g.*, *United States v. Oakford Corp.*, 79 F. Supp. 2d 357, 368 (S.D.N.Y. 1999) (finding that Guidelines overstated seriousness of offense where defendant "personally realized only a small portion of the overall gain or profits" from scheme); *United States v. Gupta*, No. 11 Cr. 907 (JSR), Dkt. No. 127 at 8-9, 14-15 (imposing a below-Guidelines sentence of 24 months' imprisonment on tipper in insider trading scheme that involved an illegal gain of over $5,000,000).

## II.     History and Characteristics of Mr. Bhardwaj

Mr. Bhardwaj's history and characteristics militate heavily in favor of a sentence that is significantly below the Guidelines Range. Mr. Bhardwaj is a 50-year old naturalized U.S. citizen, and this is his first arrest. PSR ¶¶ 75-81. He has been on bail since his arrest in this case without incident. He and his brother are the first generation of their family to become U.S. citizens; his parents remain in India and are in extremely poor health, particularly his father, who is presently suffering from dementia and diabetes. PSR ¶ 83. Due to restrictions on his liberty as a result of his arrest, Mr. Bhardwaj has for nearly two years been unable to visit and take care of his father in India as his father's health continues to fail, a circumstance that has been punitive in itself and has caused Mr. Bhardwaj to feel an enormous about of shame and regret. The depth of his pain over this is something that his friends have noticed as well. *See* Letter of Ritu Bhadwal (Exhibit B). His parents need him as soon as possible to help take care of his father and relieve his mother, who is also in ill health, of some of the burden of doing so. *See* Letter of Usha Bhardwaj (Exhibit C) at 1. One of Mr. Bhardwaj's foremost concerns – second only to his anxiety over missing time with his 9-year old daughter – is that a period of incarceration may prevent him from ever seeing his father again, and from easing the tremendous burden his mother currently faces.

Mr. Bhardwaj met and married his wife, Gauri Salwan, in the United States, and they have two children, a son who is 18 years old and a daughter who is 9. Mr. Bhardwaj's children, wife, and parents all depend upon him for support. PSR ¶¶ 90-92. A term of imprisonment would be tremendously hard on his daughter due to her age and her reliance on her parents, and due to the closeness she shares with her father. It would also compound for her the trauma of FBI agents arriving by surprise at Mr. Bhardwaj's house at dawn to arrest him, a horrifying experience for a small child which continues to be an issue for her mental health. PSR ¶ 91.; Letter of Gauri Salwan (Exhibit D) at 1. Every day that Mr. Bhardwaj spends away from his family due to a custodial sentence will be excruciatingly painful for him and, more importantly to him, will negatively impact his family.

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

A term of imprisonment will also put enormous stress on Ms. Salwan, who would assume sole childcare and financial responsibilities during any period of incarceration. Ms. Salwan is employed as a substitute teacher and suffers from health issues relating to her thyroid and hypertension.  PSR ¶¶ 90, 92.[1]  In her letter to the Court, she touches on the closeness between Mr. Bhardwaj and his children, explaining how raising children has been a source of personal maturation for Mr. Bhardwaj; how he treats his daughter like a princess; how he regularly cooks for his children; and how he is the first port of call for his children when they want something.  *See* Ex. D.  Her letter is a frank illustration of a happy and healthy home environment.  A custodial sentence will severely disrupt that environment.

Prior to his offense conduct in this case, Mr. Bhardwaj was a self-made success story in this country, for many years.  Having graduated from high school and obtained a degree in computer science in India, he moved here in the 1990s and attended Southern New Hampshire University.  PSR ¶¶ 97-98.  He has worked as a compliance officer for Clorox, an information security officer at Rodan & Fields, an information security officer at Lumentum, and, recently while awaiting sentencing, as a driver for the Door Dash food delivery service, in order to continue providing for his family.  PSR ¶¶ 99-103.  With the exception of the serious error in judgment that has brought him before this Court, Mr. Bhardwaj has lived a law-abiding life for 50 years defined by commitment to his family, hard work, and generosity.

The letter submitted by Mr. Bhardwaj's mother is much less reserved than Mr. Bhardwaj's own comments to the Probation Department about the tremendous amount of effort it took Mr. Bhardwaj to build a life in the United States and the important role that he still plays for his parents in India.  Ms. Bhardwaj explains that her son had to move away from home as a high school student in order to get an education, because there were no educational facilities where they lived.  *See* Exhibit C at 1.  He grew up in a household that did not have the financial means to provide for all of the needs of the family.  *See id.* Therefore, Mr. Bhardwaj began supporting his parents financially all the way back to when he was in college.  *See id.*  He has continued to do so throughout the course of his life, including through trips back to India to provide physical support.  *See id.*  A period of incarceration is going to have a devastating effect on his family.

The other letters submitted on Mr. Bhardwaj's behalf also give proof to his commitment to family, hard work, and generosity, and demonstrate that his offense conduct is a deviation from the kind of person he has been over the course of his entire life, rather than a reflection of it.  One of his former colleagues at Rodan & Fields describes him as someone who took it upon himself to help other people with their own careers, and someone he came to find he could trust.  *See* Letter of Raja Eswar (Exhibit E).  A priest who has been helping Mr. Bhardwaj for the past year has been struck by his "willingness to help others."  *See* Letter of Srinivas Nallan Chakravarthy (Exhibit F). These traits come through even more powerfully in the letter submitted by Devesh

---

[1] Mr. Bhardwaj suffers from a number of health issues as well, namely diabetes, hypertension, and high cholesterol.  PSR ¶ 94.

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

Rathore (Exhibit G), a friend of Mr. Bhardwaj's for more than three decades. Ms. Rathore describes a pattern of selfless acts by Mr. Bhardwaj over the course of their long friendship, including acts of friendship as significant as helping her through a struggle with depression. *See* Ex. G. Her remarkable letter is not easily summarized in a few sentences here, but is best encapsulated in her statement that Mr. Bhardwaj has "played an instrumental role in shaping who I am and where I am today in life." Ex. G at 2.

Indeed, the letters submitted on behalf of Mr. Bhardwaj are uniform in showing that his "selflessness," Letter of Shekhar Tewatia (Exhibit H) at 2, has made an extraordinary impression on many of the people who have crossed paths with him. Mr. Tewatia, a former dormitory neighbor of Mr. Bhardwaj in India, recounts vivid memories from decades ago about Mr. Bhardwaj taking steps to ensure the health and safety of members of his community, whether they were his friends or not. *See* Ex. H. He notes that his recollection of Mr. Bhardwaj obtaining medicine for classmates during a severe outbreak of the flu in 1989 is one of his strongest memories from that time in his life. *See* Exhibit H at 1. This is a testament to the positive impact that Mr. Bhardwaj has had on the community throughout his life. Such testaments extend even to his colleagues at Lumentum, where he committed the offense conduct. One of his former coworkers there and at Clorox recalls Mr. Bhardwaj saving Lumentum reputationally and financially in the face of a cyber attack, and beyond that, recalls Mr. Bhardwaj's steady empathy and compassion for his coworkers. *See* Letter of Simi Singh (Exhibit I) at 1.

As reflected in the extraordinary personal testaments referenced above, Mr. Bhardwaj is someone whose profound contributions to his family and his community far outweigh his self-sabotaging decision to commit insider trading, his first and only brush with the law, at the age of 48. *See, e.g.*, *United States v. Adelson*, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2012) ("[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance."). His steadiness and his presence in the lives of those close to him, including the members of his family but not limited to them, has been extremely important to them and will continue to be so. His history, and future, are comprised of hard work and generosity. The offense conduct here is a deviation from his long-established character. A term of incarceration that is within or close to the Guidelines Range would fail to account for the sum total of who Mr. Bhardwaj is as a person, demonstrated over the course of 50 years.

It is consistent with Mr. Bhardwaj's history and characteristics that he pleaded guilty in this case before pretrial motions, and before the conference to schedule such motions. Mr. Bhardwaj's acceptance of responsibility was swift and total, and reflects his sense of accountability for his conduct and the shame he feels over it. A term of incarceration within or close to the Guidelines Range would not account for significance of Mr. Bhardwaj's prompt plea. Not only is his timing significant in what it shows about his sense of accountability, but it had the practical effect of sparing the Government's time and resources to engage in motion practice and other pretrial litigation with him, and the Court's time and resources in adjudicating such disputes. We respectfully submit that

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

the timing of Mr. Bhardwaj's plea should be an important factor in the Court's consideration of the appropriate sentence for Mr. Bhardwaj.

## III.   Specific and General Deterrence

Neither the need for specific deterrence nor the need for general deterrence requires a sentence that imposes a term of imprisonment at or near the Guidelines Range in this case.

Specific deterrence should not be a concern at all with respect to Mr. Bhardwaj. He committed his first offense at 48 years old. He pleaded guilty before litigating. He will never be hired at a job where he will be trusted with confidential company information again for the rest of his life. In addition, he has entered into a settlement with the United States Securities and Exchange Commission (the "SEC") in that agency's parallel case that includes an officer and director bar, as well as other injunctive relief. He presents no risk of recidivism. *See, e.g.*, *United States v. Ruiz*, No. 04 Cr. 1146-03 (RWS), 2006 WL 1311982, at *4 (S.D.N.Y. May 10, 2006) ("This Court and others have previously declined to impose Guidelines sentences on defendants who . . . were over the age of forty at the time of sentencing on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants."); *United States v. Carmona-Rodriguez*, No. 04 CR 667 (RWS), 2005 WL 840464, at *4 (S.D.N.Y. Apr. 11, 2005) (noting lower risk of recidivism for defendants over the age of 40 and imposing a below-Guidelines sentence); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 428 (S.D.N.Y. 2004) (finding no chance of recidivism because defendant's former career was over). Mr. Bhardwaj's career has been destroyed; he is forfeiting all of his gains to the Government; he has lost irrecoverable time with his gravely ill father in India; he has made things immeasurably more difficult for his wife and children; and he has suffered intense humiliation since the day of his arrest, which was announced in a public press release. He will never do anything like this again.

The need for general deterrence likewise does not counsel in favor of a substantial custodial sentence. The Department of Justice's own Office of Justice Programs, in published materials that, while they do not necessarily reflect the official position of the Department of Justice at large, appear to be posted by the Department itself, openly acknowledges that "increasing the severity of punishment does little to deter crime," and that "the certainty of being caught is a vastly more powerful deterrent than the punishment." National Institute of Justice, "Five Things About Deterrence," *available at* https://www.ojp.gov/pdffiles1/nij/247350.pdf. Recent scholarship summarized by Forbes magazine likewise supports the conclusion that the likelihood of being caught is a far stronger deterrent than the length of sentence. *See* The Cost of Affording Deterrence, Nov. 16, 2021, *available at* https://www.forbes.com/sites/insider/2021/11/16/the-cost-of-affording-deterrence/?sh=42c039f97bd4. The public fact of Mr. Bhardwaj's getting caught and convicted for insider trading, which the Department of Justice advertised in a press release, and the consequences that Mr. Bhardwaj already faces and will continue to face for the rest of his life in terms of the impact the conviction has had on his reputation,

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

his career, and the financial circumstances of his family, are devastating, and accomplish the goal of general deterrence.

The SEC's lawsuit against Mr. Bhardwaj, including the injunctive relief that Mr. Bhardwaj accepted in resolving it, is also a matter of public record.  The SEC's charges, and Mr. Bhardwaj's swift resolution of them, amplify the public message that has already been delivered about the stupidity, and consequences, of committing insider trading.

## IV.    Sentences Imposed on Similarly Situated Individuals

A review of sentences imposed on similarly situated individuals also counsels strongly in favor of a sentence for Mr. Bhardwaj that is well below the Guidelines Range. We discuss in brief below a representative sample of recent insider trading sentences in this District that substantiate this point.  Significantly, the first several sentences discussed below were imposed on defendants who exercised their right to proceed to trial, whereas Mr. Bhardwaj accepted responsibility for his conduct before a trial date was even set.  We respectfully submit that Mr. Bhardwaj's swift acceptance of responsibility differentiates him from those defendants – who themselves received below-Guidelines sentences – and warrants serious consideration in the determination of his sentence.

- *United States v. Benjamin Chow*, **17 Cr. 667 (GHW).**  In *Chow*, this Court presided over the case of the manager of a $1.5 billion private equity fund, Dr. Benjamin Chow, who was convicted, following trial, of eight counts of securities fraud for tipping a friend with material non-public information about an upcoming merger.  Dr. Chow's tips resulted in over $5 million of trading profits, none of which he received personally.  Dr. Chow faced an advisory Guidelines range of 63 to 78 months' imprisonment; the Court imposed a below-Guidelines sentence of three months' imprisonment.  *See* Sentencing Transcript (Docket No. 161) at 40, 73, 81-82.

While there are important differences between this case and *Chow*, many of the factors that the Court considered in fashioning a sentence for Dr. Chow apply with respect to Mr. Bhardwaj.  In providing its reasons for the sentence it imposed on Dr. Chow, the Court emphasized, among other things, that Dr. Chow had never before been in trouble with the law (*see id.* at 78); that Dr. Chow was unlikely to recidivate (*see id.* at 78-79); that Dr. Chow was already facing punitive consequences in his career and as a result of a parallel case with the SEC (*see id.* at 79, 82-83); that Dr. Chow was deeply involved in his family life and was raising young children (*see id.* at 82-83); and that Dr. Chow was caring for aging parents in poor health (*see id.* at 82-83).  Each of these material facts is true of Mr. Bhardwaj, as discussed in more detail above, and they all counsel in favor of a sentence substantially below the advisory Guidelines Range.  Unlike Mr. Bhardwaj, who made nearly $550,000 from his conduct, Dr. Chow did not personally make money for himself through insider trading, a fact that the Court also stressed in determining its sentence in *Chow*.  But unlike Dr. Chow, Mr. Bhardwaj accepted responsibility for his offense conduct swiftly and completely, a reflection of his commitment to owning up to what he did wrong and putting it behind him as quickly as

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

possible so that he can resume his productive life in the community.  The sentence imposed on Dr. Chow is a good yardstick for determining a fair sentence for Mr. Bhardwaj.

- ***United States v. Rajat Gupta*, 11 Cr. 907 (JSR)**.  In *Gupta*, Judge Rakoff imposed a sentence of 24 months' imprisonment on defendant Rajat Gupta, who was convicted following a jury trial of four counts of insider trading and conspiracy to commit insider trading.  The illegal gain from insider trading in *Gupta* was over $5,000,000, and the defendant was the tipper.  *See* Sentencing Memorandum and Order (Docket No. 127) at 8-9.  Mr. Gupta faced an advisory Guidelines range of 78 to 97 months' imprisonment.  *See id.* at 9.  In imposing a sentence substantially below the Guidelines range, Judge Rakoff noted that Mr. Gupta's offense conduct was aberrant in the context of the personal history and characteristics he had established throughout the course of his life.  *See id.* at 10.  Judge Rakoff also emphasized that in light of the blow Mr. Gupta had suffered to his reputation based on the charges, there was extremely little chance he would recidivate and there was no need for specific deterrence.  *See id.* at 13.  Therefore notwithstanding the seriousness of Mr. Gupta's offense, which the Judge likened to "stabbing [his former employer] in the back," *id.* at 11, a sentence of 24 months was imposed.

Like Mr. Gupta, Mr. Bhardwaj has seen his reputation and career ruined – through his own doing – and presents no risk of recidivism.  He is also 50 years old and, like Mr. Gupta, is a self-made person who built a family and a life from difficult circumstances.  Unlike Mr. Gupta, Mr. Bhardwaj quickly took responsibility for his actions upon being charged.  As in *Gupta*, the advisory Guidelines range is not proportional in this case to the degree of punishment that is sufficient, but not greater than necessary, to address the offense conduct.

- ***United States v. Sean Stewart*, 15 Cr. 287 (LTS)**.  In *Stewart*,[2] Chief Judge Swain imposed a sentence of 36 months' imprisonment on a defendant who proceeded to trial on nine counts of insider trading relating to the securities of five different publicly traded healthcare companies, and was convicted on all counts**.**  Mr. Stewart faced an advisory Guidelines range of 63 to 78 months' imprisonment.  *See* Sentencing Transcript (Docket No. 241) at 31.  Chief Judge Swain found that Mr. Stewart had perjured himself at trial.  *See id.* at 12.  Chief Judge Swain also found that Mr. Stewart had violated the terms of his pretrial release (concealing it from his own lawyer) and thereby breached the Court's trust (*see id.* at 36); that his conduct was "serious and prolonged" (*see id.* at 34); that he "lied elaborately" to regulators in order to conceal his misconduct (*see id.* at 35); that he continued to commit insider trading after being approached by regulators (*see id.* at 10, 36); and that his tips allowed his father and a friend of his father's to make over

---

[2] *Stewart* was ultimately retried before Judge Rakoff after the Second Circuit vacated his conviction on appeal.  The discussion here relates to the sentence imposed by Chief Judge Swain, who presided over the first trial.

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

$1,000,000 in illegal profits (*see id.* at 6-7). Some of those profits helped to pay for Mr. Stewart's own wedding. *See id.* at 33.

In arriving at a below-Guidelines sentence of 36 months, Chief Judge Swain took note of Mr. Stewart's relationship with his young child and the disruptive impact that a period of incarceration would have on their family (*see id.* at 36-37); of his ability to contribute meaningfully to society (*see id.* at 37); of the genuine remorse he felt (*see id.* at 38); and of the fact that his career had already been ruined (*see id.* at 38). These mitigating factors all apply as well to Mr. Bhardwaj. In addition, there are significant respects in which Mr. Bhardwaj's history and characteristics compare favorably with those of Mr. Stewart. Mr. Bhardwaj has been a model citizen during the course of his post-arrest release and indeed has been working to help support his family; he took responsibility for his offense conduct; he overcame difficult childhood circumstances to establish a family and career in this country for 48 years before having any kind of brush with the law; and he did not perjure himself in court.

- ***United States v. Brijesh Goel*, 22 Cr. 396 (PKC).** In *Goel*, Judge Castel sentenced the tipper in an insider trading scheme, Brijesh Goel, to a below-Guidelines sentence of 36 months' imprisonment when he faced an advisory Guidelines range of 41 to 51 months. *See* Final Judgment (Docket No. 124). According to the Government, Mr. Goel engaged in a pattern of tipping that lasted for over a year, and he took steps to conceal his misconduct by making sure that no paper trail would exist leading back to it. *See* Gov't Sentencing Submission (Docket No. 121) at 1-4. He further concealed his misconduct by conspiring to mischaracterize an illicit payment as a loan, and again further by telling a co-conspirator to delete incriminating text messages after he became aware of an FBI investigation. *See id.* at 5. Mr. Goel took his case to trial, and at trial, Judge Castel found, he repeatedly perjured himself. *See* Cara Salvatore, "Ex-Goldman Banker Gets 3 Years for Insider Trading, 'Lies,'" Law360, November 1, 2023, *available at* law360.com/articles/1739597/ex-goldman-banker-gets-3-years-for-insider-trading-lies. Mr. Bhardwaj, by contrast, accepted responsibility for his misconduct early in his case; and he did not perjure himself or otherwise show disrespect for the law in any way during the period following his arrest. These distinctions are critical in assessing Mr. Bhardwaj's history and characteristics, and should be reflected in his sentence.

- ***United States v. Christopher Collins*, 18 Cr. 567 (VSB)**. In *Collins*, the defendant tipper was a United States Congressman who had committed insider trading while still in office, for the personal financial benefit of his son. After litigating various substantive issues through motion practice, Mr. Collins pleaded guilty to insider trading.[3] Like Mr. Bhardwaj, Mr. Collins saw his offense level go up by two levels under the enhancement for obstruction of justice, in his case for lying to the FBI. *See* Sentencing Transcript (Docket No. 179) at 19. Mr. Collins faced an advisory Guidelines range of 46 to 57 months' imprisonment. *See id.* at 20. Judge Broderick sentenced Mr. Collins to a below-Guidelines term of 26 months (*see id.* at 93), noting that Mr. Collins posed almost

---

[3] Mr. Collins was later granted a presidential pardon.

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

no risk of recidivism due to his age (*see id.* at 92); that Mr. Collins had led an otherwise law-abiding life (*see id.* at 90-92); that he had demonstrated good character throughout his life before the offense conduct (*see id.*); and that Mr. Collins had already suffered meaningfully in the form of the devastating effect the conviction would have on his career and the stigma he would have to carry (*see id.* at 92). The same mitigating traits that factored into the below-Guidelines sentence for Mr. Collins apply just as forcefully to Mr. Bhardwaj. In addition, Mr. Bhardwaj accepted responsibly far earlier in his case than Mr. Collins.

- ***United States v. David Stone*, 22 Cr. 510 (MKV).** In *Stone*, Judge Vyskocil imposed a sentence of 28 months' imprisonment on an information technology professional who faced an advisory Guidelines range of 46 to 57 months after pleading guilty to engaging in a pattern of insider trading for a period of over a year. *See* Sentencing Transcript (Docket No. 41) at 34, 38-39. In *Stone*, the Government characterized the defendant's conduct as "unusually clever and notably sustained." *Id.* at 13. Mr. Stone provided tips on 45 separate days in a period of approximately 15 months. *See* Gov't Sentencing Submission (Docket No. 32) at 2. He generated significant profits through his misconduct not only for himself, but for his wife and his father. *See id.* at 4. He traded to the tune of nearly $2,900,000 in his own personal account – a number that overwhelms the profits Mr. Bhardwaj made in this case. *See id.* at 2. He traded for more than $1,000,000 in profits in his wife's account and nearly $1,000,000 in his father's account. *See id.* at 2. He also counseled one of his tippees about how to avoid detection. *See id.* at 2. He had a keen sense at the time of his misconduct that it was illegal, characterizing it as something that "could be considered insider trading." *See id.* at 2. In explaining the below-Guidelines sentence imposed, Judge Vyskocil noted the significant number of letters submitted on Mr. Stone's behalf that painted the picture of a good person who was loved and respected by many people. *See* Sentencing Transcript at 33-34. The Judge also noted that Mr. Stone posed a low risk of recidivism, given his total lack of criminal history and sincere remorse. *See id.* at 36.

Mr. Bhardwaj's culpability compares favorably with that of Mr. Stone. His conduct was less systematic, and he made a small fraction of the money that Mr. Stone (let alone his family) made. Like Mr. Stone, Mr. Bhardwaj has lived a law-abiding, productive life and poses no threat of recidivism. His facts and circumstances warrant a sentence substantially below the advisory Guidelines Range.

- ***United States v. Woojae Jung*, 18 Cr. 518 (LAK).** In *Jung*, the defendant was an investment banking professional who tipped his brother with material nonpublic information relating to upcoming deals over a period of several years. *See* Gov't Sentencing Submission (Docket No. 51) at 1-2, 5. The Government stressed to the Court in *Jung* that the defendant was sophisticated, that he deliberately flouted specific training he had received on insider trading, and that he had taken the elaborate step of concealing his misconduct by setting up a trading account in the name of a college friend in order to trick his employer. *See id.* at 5. The Government also emphasized that the defendant had exercised "persistent deceit." *Id.* at 5. Due to the low trading amount (which was

11

Spears & Imes LLP
767 Third Avenue
New York, NY 10017

approximately $131,000) the defendant faced an advisory Guidelines range of 18 to 24 months' imprisonment.  The Government asked the Court to impose a Guidelines sentence.  *See id.* at 1.  Judge Kaplan disagreed, and imposed a substantially lower sentence of three months' imprisonment, reasoning that (1) the defendant faced potential immigration consequences as a result of his felony conviction that would be devastating for his family; (2) the defendant could have exploited the company's inside information to make much more money than he actually did, and (3) there was little to no risk that the defendant would re-offend.  *See* Sentencing Transcript (Docket No. 60) at 16-17.

As in *Jung*, there is substantially no risk that Mr. Bhardwaj will reoffend.  This is the only offense he has committed in 50 years, he will never be entrusted with material non-public information again, and he has agreed to an officer and director bar with the SEC.  And similar to *Jung*, where the defendant exploited the information to which he was privy less than he might have done, here, Mr. Bhardwaj traded for less money than certain of his own co-conspirators.  There is no excuse for what Mr. Bhardwaj did, but there is also not a need to incarcerate him for a term that comes within or near to the Guidelines Range.  A sentence substantially below the Guidelines Range will be sufficient, but not greater than necessary, to achieve a just outcome.

## V.      Conclusion

Mr. Bhardwaj is a 50-year old father of two who had his first brush with the law at age 48, when he committed insider trading.  He took responsibility for his tremendous error in judgment promptly.  His decision to misappropriate information from Lumentum cost him his job there and his chance to ever work in a similar job again.  He is facing stiff injunctive penalties from the SEC, a payment of over $500,000 in forfeiture, the ruination of his career and his reputation, and a different life moving forward.  His sole aim, since his arrest in this case, has been to put this aberrational chapter of his life behind him as quickly as possible so that he can continue to provide the pivotal role in his family, especially by being present for his children and for his parents, that he has provided for his entire adult life and that they need him to provide.

We respectfully ask that in light of all of the factors discussed above, the Court impose a sentence on Mr. Bhardwaj that is substantially below the Guidelines Range.

Respectfully submitted,

_____/s_____
Max Nicholas
Spears & Imes LLP
Counsel for Amit Bhardwaj
212-213-1715
mnicholas@spearsimes.com